*Carter v. Syracuse City School District*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of March, two thousand twenty-one.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> DENNY CHIN,
> JOSEPH F. BIANCO,
> *Circuit Judges*.

_____

CORENE D. CARTER, A.K.A. CORENE BROWN,

> *Plaintiff-Appellant*,

> v. 20-880

SYRACUSE CITY SCHOOL DISTRICT, DANIEL LOWENGARD, JOHN DITTMAN, JILL STEWART, JOHN DOE(S), JANE DOE(S),

> *Defendants-Appellees*.[*]

_____

| | |
|---|---|
| For Plaintiff-Appellant: | A.J. BOSMAN, Bosman Law Firm, LLC, Blossvale, N.Y. |
| For Defendants-Appellees: | MILES G. LAWLOR, Ferrara Fiorenza PC, East Syracuse, N.Y. |

_____

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part, **VACATED** in part, and the case is **REMANDED**.

Plaintiff-Appellant Corene D. Carter, a former English teacher at the Institute of Technology of the Syracuse City School District ("School District"), appeals from a February 3, 2020 memorandum-decision and order of the Northern District of New York (Scullin, *J.*) granting summary judgment in favor of the School District, Daniel Lowengard, the School District's former Superintendent, John Dittman, the former Principal of the Institute of Technology, and Jill Stewart, former Vice Principal of the Institute of Technology (together, "Defendants-Appellees") on a number of claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1983, and the New York Human Rights Law, N.Y. Exec. L. § 296 *et seq.* ("NYHRL"); dismissing Carter's NYHRL claim against Superintendent Lowengard and the School District; and denying Carter's application for additional discovery under Federal Rule of Civil Procedure 56(d). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**A. Dismissal of NYHRL Claim**

At the start, the district court properly dismissed Carter's NYHRL claim against Superintendent Lowengard and the School District for failure to serve a notice of claim on the governing body of the School District. *See* N.Y. Educ. L. § 3813(1). Carter argues that she satisfied § 3813(1) by mailing a notice of claim to Superintendent Lowengard, who was, *ex officio*, the CEO of the Board of Education. *See* N.Y. Educ. L. § 2566(1). However, in actions against

school districts, "[t]he statutory prerequisite" of presenting notice of claim on the governing body "is not satisfied by presentment to *any other individual* or body[.]" *Parochial Bus Sys., Inc. v. Bd. of Educ. of N.Y.C.*, 60 N.Y.2d 539, 548 (1983) (emphasis added). Because Carter served notice of claim on, at best, a Board member rather than the Board itself or the official it designated to receive service, *see* Policy Manual of the Syracuse City School District § 2230 (2017) (adopted 2002) (designating a Clerk to "[r]eceive subpoenas and claims against the School District"), she did not satisfy § 3813(1).

## B. Summary Judgment on Remaining Claims

We review a district court's grant of summary judgment de novo. *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considering a summary judgment motion must construe the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in her favor. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). The court's role in deciding a motion for summary judgment "is to identify factual issues, not to resolve them." *Jasco Tools, Inc. v. Dana Corp.* (*In re Dana Corp.*), 574 F.3d 129, 156 (2d Cir. 2009). We vacate the district court's grant of summary judgment and remand for trial.

### 1. Discrimination

Carter claims, under Title VII, § 1983, and the NYHRL, that Defendants-Appellees discriminated against her because she is a Black woman. We analyze this claim according to the familiar framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1] The district

---

[1] Under *McDonnell Douglas*, a plaintiff must establish a prima facie case of discrimination by showing "'(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Vega v.*

3

court held that Carter did not establish a prima facie case because she failed to adduce sufficient evidence that she suffered an adverse employment action.    We disagree and further conclude that Carter's evidence, if credited, would permit a reasonable jury to find that she was discriminated against.

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment."    *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (internal quotation marks omitted).    A rational juror could find that a Carter, who claims she was (1) subject to a negative evaluation carried out under irregular circumstances, (2) placed on an improvement plan, (3) reassigned from classroom teaching to teaching from a cart, (4) excluded from a master teacher program, (5) removed as chair of the English Department, (6) assigned to teach tenth grade while her cohorts advanced to eleventh grade, and (7) passed over for assignment to teach Advanced English, has adduced enough evidence to demonstrate at least one adverse employment action.    Whether her exclusion from the master teacher program is likened to a failure to promote, *see Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003), a demotion, *see id.* at 138, or simply removal from eligibility for a prestigious position, *see Lore v. City of Syracuse*, 670 F.3d 127, 170 (2d Cir. 2012), a jury reasonably could conclude it was an adverse employment action.[2]    Next, a jury could reasonably conclude that Carter's removal as chair of

---

*Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)).    Then, "a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors," which the defendant may rebut by "articulat[ing] some legitimate, nondiscriminatory reason for the disparate treatment."    *Id.* (internal quotation marks omitted).    If the defendant carries this burden of production, "the burden shifts back to the plaintiff to prove that the [defendant]'s reason 'was in fact pretext' for discrimination."    *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804).

[2]  The district court found that Carter adduced "no evidence" that a master teacher program exists.    *Carter v. Syracuse City Sch. Dist.*, No. 10-CV-690, 2020 WL 529884, at *6 (N.D.N.Y. Feb. 3, 2020).    However, Carter's testimony about a master teacher program, along with Director of Personnel Williams's reference to "Master teachers" in his interview with the state Division of Human Rights, *see* App'x. at 878, are

4

the English Department was "a demotion evidenced by . . . a less distinguished title" and so an adverse employment action. *Terry*, 336 F.3d at 138. A jury could also reasonably find that Carter being assigned to teach from a cart, staffed to the tenth grade, and passed over for an Advanced English class were adverse employment actions. Although these were arguably nonactionable "alteration[s] of job responsibilities," *id.* (internal quotation marks omitted), a jury could credit Carter's testimony that Defendants-Appellees singled her out, demeaned her, and materially altered her teaching responsibilities for the worse. Finally, while a negative evaluation without more may not be an adverse employment action, *see Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 765 (2d Cir. 2004), Carter has put forward enough evidence for a jury to find that her negative evaluation and placement on an improvement plan contributed to the other actions she claims Defendants-Appellees took against her[3]

Carter has also adduced enough evidence for a jury to infer that any adverse employment action was motivated by racial animus. When Carter complained to Principal Dittman that her colleagues were mistreating her, he agreed that they were intimidated by her because she was a Black woman and stated that he was also intimidated by her. Later, after being put on an improvement plan and experiencing professional fallout, Carter asked Vice Principal Frazier, "Why are they doing this to me?" App'x 892. He responded, "You're a well educated Black

---

sufficient for a reasonable jury to find that a program exists in which experienced teachers instruct newcomers. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

[3] Carter testified that unnamed school officials told her colleagues "not to speak to her," and she argues that this was an adverse employment action. Appellant's Br. at 21. Because the presumption of truth we afford a nonmovant's evidence on summary judgment does not extend to testimony lacking in "concrete particulars," *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), Carter's bare allegation is insufficient to permit a reasonable jury to find that school officials told staff not to speak to her.

woman. They're intimidated by you." *Id.* These comments by senior school officials attributed Carter's professional setbacks to prejudice against Black women. They are thus enough not only to surmount Carter's minimal burden of making a prima facie case but also to permit a finding that the neutral reasons the School District gave for its actions were pretext for racial discrimination.

### 2. Hostile Work Environment

We disagree with the district court that no reasonable jury could find that Carter was subjected to a hostile work environment. Carter testified that her colleagues and supervisors made a number of racially hostile comments to her. Her colleague, List, repeatedly talked about the school's "cute little Black kids" and how "poorly behaved" and "ill mannered" they were. App'x 887. Another colleague, Pairaino, began to tell Carter a racist joke, stopping only upon seeing her disapproval. Another colleague, Resti, told Carter at a doctor's office, regarding a fight between two Black students, that "it was 'cultural' so what could you expect." App'x 890. When Carter complained about her colleagues' behavior to Principal Dittman, he agreed "that the White teachers felt intimidated by [her] because of [her] status as a 'tall, Black, well-spoken, educated, professional woman,'" and stated that he was intimidated by her. App'x 887. And when Carter asked Vice Principal Frazier, "Why are they doing this to me?" after she received a negative evaluation and was put on an assistance plan, he responded, "You're a well educated Black woman. They're intimidated by you." App'x. 892.

In light of this litany of disturbing comments, we cannot conclude, as a matter of law, that Carter could not convince a reasonable factfinder that she was the victim of harassment "sufficiently severe or pervasive to alter the conditions of [her] employment[.]" *See Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). Furthermore, Carter's testimony that she complained

6

to senior district officials to no avail would allow a reasonable jury to conclude that the School District is liable for this hostility because it "knew of the harassment but did nothing about it." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (internal quotation marks omitted). Likewise, a jury could find that Principal Dittman, who according to Carter agreed that he and others were intimidated by her because of her race, could be found liable under § 1983 by virtue of his "personal involvement" in creating a hostile work environment. *See Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004).

### 3. Municipal Liability

We disagree with the district court that Carter failed to raise a genuine issue of material fact on the School District's liability under § 1983. Although Carter has not shown "persistent and widespread" racial discrimination by district employees, *see Connick v. Thompson*, 563 U.S. 51, 61 (2011), she has introduced enough evidence for a jury to infer that at least one School District policymaker, Director of Personnel Williams,[4] was deliberately indifferent to multiple complaints that district employees were subjecting a teacher to a racially hostile work environment, *see Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126–27 (2d Cir. 2004). Thomas N. Moore, a former Syracuse teacher, testified that school staff made racially abusive comments to him and failed to discipline students who did the same, and that he complained to Williams multiple times to no avail. To be sure, a policymaker's failure to act only subjects a municipality to liability when the need for action is so "obvious" that inaction amounts to a choice

---

[4] A policymaker is one who is "responsible for establishing final government policy respecting [the relevant category of] activity." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986). The parties did not brief, and the district court did not decide, whether Williams made personnel policy. As such, Defendants-Appellees have not carried their burden of demonstrating the absence of a genuine issue of material fact on the question.

7

to perpetuate harm. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). However, "[a]n obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate and forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). Carter's evidence, if credited, supports a finding that a School District policymaker did nothing in response to multiple complaints of conduct that presented a clear risk of constitutional injury, and therefore an inference of deliberate indifference.[5]

### 4. Retaliation

We disagree with the district court that Carter has produced insufficient evidence for a jury to find that the School District, by denying her transfer request, retaliated against her in violation of Title VII.[6] A jury could conclude that the denial of a physician-recommended transfer under these circumstances would dissuade a reasonable worker from pursuing a civil rights complaint against the School District.[7] *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68

---

[5] Additionally, both Moore and Freddy Triana, another former Syracuse teacher, testified that the School District did not investigate their complaints of racial discrimination, further supporting Carter's claim that the School District had a "policy of inaction" with respect to such complaints. *Connick*, 563 U.S. at 61–62 (quoting *Canton*, 489 U.S. at 395 (O'Connor, *J.*, concurring in part and dissenting in part)); *see Vann*, 72 F.3d at 1049.

We note, finally, that to prevail on her claim, Carter must also show that the claimed municipal policy or custom caused her constitutional injury. *See Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020). Since she has adduced evidence that the creation of and acquiescence in racially hostile work environments is a policy attributable to the School District, a jury should decide whether her injury was caused by that policy.

[6] Carter asks for additional discovery on her retaliation claim. However, we review "the denial of leave for discovery under Fed. R. Civ. P. 56[(d)] for abuse of discretion." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). We perceive no abuse of discretion in the district court's decision not to permit further discovery, especially in light of Carter's failure to appeal the Magistrate Judge's initial denial of her request to the District Judge.

[7] Carter has produced enough evidence for a jury to find she has made out the other elements of a prima facie case of retaliation. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (plaintiff's burden in

(2006). The School District raises as a nonretaliatory reason for denying Carter's transfer that she failed to follow the transfer-request process established by her collective bargaining agreement ("CBA"). However, in light of Carter's testimony that she did not recall following the CBA process when she transferred into the Institute of Technology, that she was offered a transfer to a different school in the same building as the Institute of Technology without having filled out the CBA transfer form, and that the School District did not raise her failure to follow the CBA process as a basis for denying her transfer request until an advanced stage of litigation, a jury could conclude that this reason was pretext for retaliation.

Consequently, we remand Carter's (1) discrimination, (2) hostile work environment, (3) municipal liability, and (4) retaliation claims for trial.

\* \* \*

We **AFFIRM** in part, **VACATE** in part, and **REMAND** the case for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

demonstrating a prima facie case is "*de minimis*"). The parties do not dispute that Carter engaged in a protected activity that the School District knew about. And a genuine issue of material fact exists on whether Carter's protected action bore a causal connection to her transfer denial. *Compare* Appellees' Br. 61 (pointing to a sixteen-month gap between the state civil rights charge and the transfer denial), *with* App'x 1238 (indicating a one-month gap between Carter filing her complaint in this action and the transfer denial).